George A. Brenner, of New York City (Leo Reinstein, of New York City, and William P. Gannon, of Syracuse, of counsel), for plaintiff.

Addison S. Pratt, of New York City, for defendant.

## PLACE v. BROOKS.

### Civ. No. 15–441.

District Court, S. D. New York.

March 2, 1943.

KNOX, District Judge.

Plaintiff is the executrix of the Will of her late husband, Ernest F. A. Place. For many years, he was associated with defendant in the practice of custom's law in the City of New York. She here sues defendant upon two causes of action.

In the first of these, she charges that upon January 2, 1921, the decedent entered into a law partnership with defendant and his late father, under the firm name of Brooks & Brooks. Under the allegations of the complaint, Mr. Place was to receive twenty per centum of the net profits of the partnership, and in the event of loss, was to bear this proportionate

share of the same. Profits and losses were to be stated at the end of each calendar year, and the partnership, if such there was, was to continue indefinitely. Frederick W. Brooks, Senior, died in the year 1934, and thereafter, according to plaintiff, her decedent and Frederick W. Brooks, Jr. carried on the partnership between them until the death of Mr. Place upon August 8, 1940. At this time, it is said that the firm was possessed of assets consisting of good will, pending litigations, and the like, together with tangible assets of uncertain (but substantial) size.

In the latter part of July 1939, Mr. Place became ill, being unable to travel regularly between his home in New Jersey, and his office in New York.

During his sickness, Mr. Place did certain work for the firm at his place of residence.

On January 12, 1940, defendant submitted to decedent a statement which indicated that the law business in which they had engaged for the year 1939, had resulted in a loss. In submitting the statement, defendant asked Mr. Place, who had been drawing the sum of $85 per week, and who had advanced other funds by defendant, to execute notes in the sum of $5260 to cover the advances and drawing account. This was done. Plaintiff claims that these notes were to cover Mr. Place's share of the losses.

In March of 1941, defendant brought suit upon the notes in the Supreme Court of New Jersey, against plaintiff in her capacity as executrix of her husband's Will, and such suit, at the time this action was begun, was still pending.

Plaintiff's complaint, in the instant case, states that, since the death of Mr. Place, defendant has continued in possession of the firm's assets, and has proceeded to collect fees, etc., and pay the firm debts and liabilities; that throughout the years 1939 and 1940, defendant failed to pay to Mr. Place his share of the earnings of the firm except certain advances (unspecified in amount), and that he has also failed to pay any sums to plaintiff as the executrix of her husband; that she has requested an accounting of the partnership transaction, and that the same has not been furnished. By reason of the matters and things set forth in the first count of her complaint, plaintiff asks for appropriate equitable relief.

The second count of the complaint is predicated upon the alleged right of Mr. Place to participate in the firm profit under a contract of employment, and that plaintiff, as decedent's executrix, is entitled to recover twenty per cent of the net fees derived by such firm from certain business pending in its office between January 2, 1935, and the end of June 1940.

At the conclusion of the testimony, I expressed my belief that the record would not support a finding that Mr. Place was a member of the firm of Brooks & Brooks. Upon reflection, I am satisfied that this is so. Mr. Place, it is true, had authority to sign stipulations upon behalf of the firm, to appear in court, to consult clients and carry on negotiations with other attorneys. But, as any one connected with local law practices and court procedure well knows, such acts do not necessarily imply or indicate that a person who performs them is a member of the firm he represents. At no time during Mr. Place's association with Brooks & Brooks did his name appear in notices filed in the Office of the Clerk of New York County, or in public prints, as required by Section 81 of the Partnership Law of the State of New York, Consol. Laws N.Y. c. 39. As indicating that Mr. Place never considered himself to be a partner of defendant, it is worthy of note that he (Place) filed application for a Social Security number under the Federal Security Statutes; that he received the same, and that, thereafter, defendant regularly paid the Social Security taxes imposed by the Act upon Mr. Place's salary; the same as was done for other employees in the office. Except upon special instances, and when expressly authorized under powers of attorney, Mr. Place had absolutely no authority or power of disposition over the firms' bank accounts. Such powers of attorney would come into being just before defendant departed upon some contemplated absence from the country. After each such absence, the power of attorney would be immediately revoked. Place filed no partnership income tax returns and, so far as appears, he never asserted or claimed to defendant that he was, in truth and reality, his partner. During decedent's association with defendant, he engaged from time to time, and with the knowledge of defendant, in some law work of his own. Upon these occasions, Place made no division of fees received from

such work, nor did he in any way account therefor.

■ All these matters persuade me that Mr. Place was nothing more than an employee of defendant, and that plaintiff can have no recovery upon the basis of the existence of the alleged partnerships.

Plaintiff argues that, for the losses incurred by defendant in 1939, Mr. Place obligated himself to pay his share thereof, viz.; twenty percent. The proof does not support this contention. According to the statement of losses for the year 1939, as contained in the copy thereof attached to plaintiff's complaint, the same amounted to $13,428.34. If this be true, Mr. Place's share would be about $2700. Upon receipt of the statement, decedent gave defendant notes for $5280 of this sum $4420 represented weekly drawings by Mr. Place, and $840 stood for other advances made by defendant. It seems reasonable to suppose that upon this occasion, if Place was a partner of defendant, something would have been said or done with respect to Place's share of the losses—about $2700. Defendant did not ask for a note, or for payment thereof, and Place, apparently, said nothing about his liability therefor. For the year 1939, Place, under the arrangement, was not entitled, due to losses, to any part of defendant's income. He did, however, as has been said, have a drawing account and, when the adjustment thereof was made, all that defendant asked was to have Place's note for the advances that had been made to him. Nothing more having been said or done, I can only interpret Place's compliance with defendant's request to execute the notes, as an acquiescence in his status as an employee, and not as a partner of defendant.

When, upon June 20, 1940, defendant notified decedent that his employment would cease at the end of that month, there was pending in defendant's office certain customs cases that would, in due course, by reason of a decision shortly before rendered, result in the collection of rather lucrative fees. It is claimed that defendant's action in severing decedent's employment was for the purpose of depriving Place of participation therein, and unconscionable, and that he now should be required to undo his wrong.

If I am correct in holding Place to have been the employee of defendant, and not his partner, the defendant was authorized to terminate the hiring at any time he saw fit, there being no specified duration of employment. As early as March 1940, defendant had informed decedent that payments to him could not continue indefinitely, and this was about three months prior to the decision which proved to be of advantage to defendant. And, when the June letter went forward, there is no convincing proof that defendant then knew of the decision which was later to result in his receipt of substantial sums of money. Defendant can, therefore, be acquitted of a design to treat decedent in an unconscionable manner. Defendant's agreement was to pay decedent twenty percent. of the net fees received in a particular year, and to these he was limited. Until a year's end, he had no right to share in fees accruing or accrued, and not paid during the year. That this was the understanding of the parties seems to be borne out by what was done by them in 1921 when decedent agreed to accept twenty percent. of the net fees received in a particular year by way of compensation.

■ That year decedent received the sum of $13,549, as his share of the profits. Approximately seventy percent. of the fees for the year were derived from cases that had come into the office of Brooks & Brooks in previous years. In other words, it seems to have been understood that no fees were earned until they were paid, and that until paid, decedent, as an employee, had no interest in what might turn out to be the income of pending business. Were it otherwise, plaintiff, possibly, for years to come, would have a right to share in fees hereafter received from business that was in the office of Brooks and Brooks, at the time of decedent's demise. I am satisfied that no such result was ever contemplated. It appears that during the year 1940, and up to the time of decedent's death, the latter had received a small sum in excess of defendant's net profit for that portion of the year. As a consequence, I have no alternative than to dismiss plaintiff's complaint. The dismissal, however, will be without costs.